IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

JANICE PERHAMSKY, *et al.*,

    Plaintiffs,

        v.                      CIVIL NO.: WDQ-09-1756

NORMAN FLINKMAN,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Janice Perhamsky, individually and as personal representative of Mark Perhamsky's estate, sued Norman Flinkman for conversion. For the following reasons, Flinkman's motion for summary judgment will be denied.

I. Background[1]

After her husband's death on January 9, 2008, Janice Perhamsky ("Perhamsky") came to Baltimore to wind up his affairs. Janice Perhamsky Aff. ¶ 3. Flinkman, Perhamsky's cousin, traveled from Florida to assist her in Baltimore from

---

[1] The Court will draw inferences from the facts in the light most favorable to Perhamsky, the non-moving party. *See Matsushita Elec. Indus. Co. v. Zennith Radio Corp.*, 475 U.S. 574, 587 (1986).

July 12, 2008 to August 24, 2008.[2] *Id*. ¶ 2. Originally, Flinkman told Perhamsky that he was willing to help her without compensation, but he later requested payment for his services. *Id*. ¶ 3. The parties dispute whether they reached an agreement about Flinkman's compensation. *Compare id*. ¶ 3 *with* Susan Flinkman Dep. 28:9-15.[3]

While in Baltimore, Perhamsky opened a bank account (the "join account").[4] Perhamsky Dep. 14:16-18. Believing that two names were required, Perhamsky added Flinkman's name to the account--this allowed each to access the funds without the other's permission--but she did not intend to transfer ownership of the funds to Flinkman. *Id*. 14:16-17, 16:7-19; Perhamsky Aff. ¶ 5. On September 3, 2008, Flinkman withdrew $100,000 from the joint account. Perhamsky Aff. ¶ 4. Perhamsky demanded return of the money, but Flinkman refused. *Id*. Because she wanted to settle the matter quickly, Perhamsky offered to let Flinkman keep up to $50,000, but he never returned any of the money. *Id*.

---

[2] Flinkman inquired about Mark Perhamsky's accounts at 6-8 banks, organized his assets, and took Janice Perhamsky to several medical and hair appointments. Perhamsky Aff. ¶ 2.

[3] Although she admits that Flinkman requested $100,000 for his services, Perhamsky denies agreeing to pay him any specific amount. Janice Perhamsky Dep. 13:17-20, 24:14-17, 25:1-5, 11-13.

[4] Flinkman did not contribute funds to the account. Perhamsky Aff. ¶ 5.

On May 22, 2009, Perhamsky sued Flinkman for conversion in the Circuit Court for Baltimore City. Paper No. 1 at 1. On July 6, 2009, that case was removed to this Court. *Id*. On July 11, 2009, Flinkman answered. Paper No. 10. On February 12, 2010, Flinkman moved for summary judgment. Paper No. 20.

II. Analysis

    A.    Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial

3

judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

B.  Conversion

In Maryland, conversion is an intentional tort that occurs when a person exerts "ownership or dominion" over the personal property of another in denial of--or inconsistently with--the rights of the owner. *Darcars Motors of Silver Springs, Inc. v. Borzym*, 379 Md. 249, 841 A.2d 828, 835 (Md. 2004) (internal citations omitted). To be liable for conversion, a person must have "inten[ded] to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 494 A.2d 200, 208 (Md. 1985). But "the intent that must be shown does not necessarily involve an improper motive." *Id*.

Flinkman argues that he was entitled to take $100,000 from the joint account because (1) Md. Code, Fin. Inst. § 1-204(f) permits one with access to a joint bank account to withdraw funds for his own use, and (2) he and Perhamsky entered an agreement for payment of his services in the amount of either $50,000 or $100,000. Def.'s Mot. 2-3. Perhamsky contends that (1) access to funds in a joint account is not ownership of those funds, and (2) there is no evidence of an agreement for any specific payment to Flinkman. Pl.'s Opp. 2-6.

4

Unless the account agreement expressly provides otherwise, "the funds in a multiple-party account may be withdrawn by any party or by a convenience person for any party or parties, whether or not any other party to the account is incapacitated or deceased." Md. Code, Fin. Inst. § 1-204(f). This provision states the parties' withdrawal rights--but not the property rights--to the funds in a multi-party account.[5] Because Perhamsky has testified that she had no donative intent when she created the joint account,[6] Flinkman's access to the funds does not establish his property right in them.

Flinkman has also failed to establish an enforceable agreement with Perhamsky for a specific payment. In her deposition, Perhamsky stated that she planned "to give Norman money for helping her" but never "quote[d] any amount" or told him "how much [she] was going to give him at the end of everything." Perhamsky Dep. 24:14-17. Although she

---

[5] Maryland law recognizes that some joint accounts are not intended to create a joint tenancy but instead allow multiple parties access for the convenience of the account creator. *See Haller v. White*, 228 Md. 505, 180 A.2d 689, 692 (Md. 1962); *Hartlove v. Maryland Sch. for the Blind*, 111 Md. App. 310, 681 A.2d 584, 602 (Md. Ct. Spec. App. 1996), *rev'd on other grounds*, 344 Md. 720, 690 A.2d 526 (1997). If there is no donative intent, the funds in these "convenience accounts" remain the property of the account creator. *See Haller*, 180 A.2d at 692-93.

[6] Perhamsky stated that she intended to give Flinkman access to the money in the joint account but "didn't think he was going to take that money unbeknownst to [her]." Perhamsky Dep. 16:11-12.

acknowledged Flinkman's request for $100,000, Perhamsky testified that she never agreed to pay him that sum. *Id*. 25:1-10. Perhamsky's vague statements to Flinkman's daughter that she "want[ed] to take care of him," "want[ed] to do something for him," and "wanted to give him [$100,000]" are insufficient to establish an agreement between the parties for payment of a certain sum to Flinkman.

III. Conclusion

For the reasons stated above, Flinkman's motion for summary judgment will be denied.


July 1, 2010                    _____/s/_____
Date                            William D. Quarles, Jr.
                                United States District Judge